UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
COVINGTON

|  |  |
|---|---|
| JASON DONALD BRASHEAR, | ) ) ) |
| Plaintiff, | ) ) No. 2:18-CV-173-WOB-HAI |
| v. | ) ) ) RECOMMENDED DISPOSITION |
| JAMES A. DALEY, *et al.*, | ) ) |
| Defendants. | ) ) |

\*\*\*  \*\*\*  \*\*\*  \*\*\*

District Judge Bertelsman previously described this action as follows:

> [Plaintiff] Brashear brings a number of 42 U.S.C. § 1983 claims all stemming from an incident that occurred on August 4, 2018, at the Campbell County Detention Center when he was allegedly forced to walk down the stairs handcuffed behind his back, subsequently fell, and sustained injuries. Among other things, Brashear contends the Campbell County Detention Center's policy of walking inmates down stairs while handcuffed is unconstitutionally dangerous, and also that a Southern Health Partners policy resulted in inadequate medical treatment after his fall. Further, Brashear sues a number of defendants for claims such as excessive force and deliberate indifference to his medical needs.

D.E. 8 at 1-2. Plaintiff was at Campbell County Detention Center from June 2018 to December 2018. D.E. 91 at 5. Upon initial review, Judge Bertelsman dismissed Plaintiff's slander and First Amendment claims, but permitted the other claims to proceed. *Id.* Judge Bertelsman also denied Defendants Daley and Sendelbach's pre-discovery motion for partial dismissal on the basis of qualified immunity. D.E. 37. Judge Bertelsman noted:

> the Court's review of the case law suggests that handcuffing an inmate behind his back and subsequently forcing him to walk down stairs without help might be a constitutional violation, but also might not. The difference turns on the factual context of each case, which is not yet established in the present record.

*Id*. at 2-3.

Plaintiff's remaining claims are:

(1) Against Correctional Officer David Stitsinger, an Eighth Amendment claim of excessive force on account of Stitsinger's alleged rough handling of Plaintiff in an attempt to get Plaintiff to an X-ray machine following the accident.

(2) Against Correctional Officer Wade Sendelbach, an Eighth Amendment claim of deliberate indifference to inmate safety on account of Sendelbach's decision to order Plaintiff to walk down a flight of stairs while handcuffed.

(3) Against Jailer James Daley, an Eight Amendment claim of deliberate indifference to inmate safety for allegedly permitting a practice or policy of inmates being walked unsafely down stairs in handcuffs.

(4) Against Head Nurse Amanda Holub, an Eighth Amendment claim of deliberate indifference to his medical needs relating to his medical treatment after the accident.

(5) Against Dr. Mina Kalfas, the jail's supervising physician, a claim of deliberate indifference for maintaining inadequate treatment policies.

Plaintiff was deposed under oath on November 4, 2019, and the transcript is filed at Docket Entry 91. For purposes of this Recommended Disposition, the Court accepts as true all of Plaintiff's *factual* representations made during his deposition.

The record also contains a video recording of Plaintiff's accident, which the Court has reviewed. *See* D.E. 92. The video includes footage from a single camera pointed at the end of the stairwell. There is no sound. At the moment the video begins, Plaintiff's knees are already on the steps, so the moment he slipped is not depicted. Plaintiff can be seen tumbling down the metal stairwell onto the floor, where he lies motionless on his side. He is followed down the

stairs by another inmate, and then a correctional officer. Three other officers and a nurse soon gather around Plaintiff. About two and a half minutes after the fall, the nurse rolls Plaintiff onto his back and inspects his head. Plaintiff moves his arms and appears to speak. About six minutes after the fall, Plaintiff, with assistance, gets up and walks to a wheelchair, where he is taken offscreen.

On February 26, 2020, Defendants Daley, Sendelbach, and Stitsinger moved for summary judgment. D.E. 90. The next day, Defendants Holub and Kalfas moved for summary judgment. D.E. 93. Plaintiff responded. D.E. 94. Defendants Daley, Sendelbach, and Stitsinger filed a reply. D.E. 95. Defendants Holub and Kalfas did not file a reply within the allotted time.

**General Legal Standards**

A motion for summary judgment under Rule 56 challenges the viability of the other party's claim by asserting that at least one essential element of that claim is not supported by legally sufficient evidence. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324-25 (1986). If the moving party demonstrates that there is no genuine dispute as to any material fact and that it is entitled to a judgment as a matter of law, the party is entitled to summary judgment. *Kand Medical, Inc. v. Freund Medical Products, Inc.*, 963 F.2d 125, 127 (6th Cir. 1992).

The moving party does not need its own evidence to support this assertion, but need only point to the absence of evidence to support the claim. *Turner v. City of Taylor*, 412 F.3d 629, 638 (6th Cir. 2005). The responding party cannot rely upon allegations in the pleadings, but must point to evidence of record in affidavits, depositions, and written discovery which demonstrates that a factual question remains for trial. *Hunley v. DuPont Auto*, 341 F.3d 491, 496 (6th Cir. 2003).

The Court reviews all the evidence presented by the parties in a light most favorable to the responding party (here, Plaintiff), with the benefit of any reasonable factual inferences which can be drawn in his favor. *Harbin-Bey v. Rutter*, 420 F.3d 571, 575 (6th Cir. 2005). Courts liberally construe the pleadings of *pro se* claimants and hold their petitions to a less stringent standard than similar pleadings drafted by attorneys. *Hahn v. Star Bank*, 190 F.3d 708, 715 (6th Cir. 1999) (citing *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)). The Court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

"[T]he Eighth Amendment does not apply to every deprivation, or even every unnecessary deprivation, suffered by a prisoner, but only that narrow class of deprivations involving 'serious' injury inflicted by prison officials acting with a culpable state of mind." *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc) (quoting *Hudson v. McMillian*, 503 U.S. 1, 20 (1992). "The Eighth Amendment protects prisoners only from that conduct which is 'repugnant to the conscience of mankind.'" *Rafferty v. Trumbull Cty., Ohio*, 915 F.3d 1087, 1094 (6th Cir. 2019) (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010)). Only the unnecessary and wanton infliction of pain implicates the Eighth Amendment. *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

### I. Excessive Force (CO Stitsinger)

Plaintiff alleges that CO Stitsinger manhandled him after his fall in violation of the cruel and unusual punishment clause of the Eighth Amendment to the United States Constitution. D.E. 1 at 3. After he fell down the stairs, Plaintiff awoke in a cell with Nurse Holub and CO Stitsinger nearby. They were waiting for the arrival of a mobile x-ray unit. When the x-ray unit

4

arrived, CO Stitsinger told Plaintiff to walk to the cell next door to be x-rayed. D.E. 91 at 11.[1] Plaintiff replied that he was unable to walk. In his deposition, Plaintiff described what happened next:

> I told him that I couldn't get up and I was hurt. And he said, get up. I said, I can't. He said, you going to get up. I said, I can't get up. I said, I'm hurt, like I can't move. And he said, you get up or I'm going to drag you back to your cell. And I told him . . . you're going to have to do what you got to do because I'm hurt and I can't get up. . . . I got shooting pains running down my back. And [Nurse Holub] said, he's lying.
>
> . . . .
>
> I said, please call the jailer. He said, I'm not calling the jailer and wasting his time for this. I said, I need a neck brace, something, you know what I mean, you know, I can't get up. And he said -- I forget exactly what he said, but that's about the time he grabbed me by my arm and jerked me -- jerked my whole body up off the metal rack.

D.E. 91 at 11-12.

Plaintiff explained that he was lying on his right side and CO Stitsinger "grabbed" him on the upper part of his left arm. D.E. 91 at 12. He then lifted Plaintiff "up off the mat." *Id*. After CO Stitsinger lifted Plaintiff's whole body, "he started jerking me up and down telling me to quit resisting." *Id*. Plaintiff was "trying to stay as still as [he] could." *Id*. Although Plaintiff wanted to be x-rayed, he "was just hurting so bad that [he] couldn't move." *Id*. Plaintiff was "being jerked up and down" and "started screaming." *Id*. Plaintiff refused to move his legs to help Stitsinger lift him, so Stitsinger lifted him three or four times. *Id*. at 13. "[O]nce I started screaming, he put me back down onto the rack and called for another officer to come assist." *Id*. Correctional Officer Dorgan then came to help Stitsinger. "[T]he two of them grabbed me, made me stand up, proceeded to half carry walk me to the next cell. Once they got me in there, Officer Dorgan stayed in there and pushed me into the positions that the x-ray lady needed me into." *Id*.

---

[1] Page number references are to the page numbers generated by ECF.

5

Plaintiff was asked what CO Stitsinger should have done instead:

> I feel that he should have never picked me up like he did and shook me like he did. He had no idea what the damages could be to me. This is before x-rays even. There was no immediate danger of anything happening. There was no reason that he should have proceeded to take it to an aggressive manner. I wasn't hurting nobody. . . . I could understand an aggressive move just enough to restrain me, but I wasn't fighting him. I . . . was telling him that I was hurt and could not move. What was his answer to that? Get up or I'm going to drag you. And then he says aggressively -- you know, he just told me he's going to pick me up and drag me back to my cell. If I don't get up and walk, he's going to drag me all the way there and then he grabbed me and picked me up and started jerking me talking about quit resisting. I know I'm screaming. I didn't know how much farther he was going to press that, but luckily he just put me back down and called for CO Dorgan to come.

*Id.* at 19-20.

Plaintiff explained that the "excessive force" consisted of "[t]he picking me up and shaking me. He took control of my body and forcefully jerked it off the ground, picked me all the way up off the ground – or off the bed, off the metal rack into the air and jerked me back and forth right after I just fell down the stairs." *Id.* at 21-22. Instead, the prison staff

> could have supported my neck, put something on there and had more officers to actually help me up. . . . I needed a backboard or something, you know. I'm not for sure exactly what could have been the answer, but I know [it was not] picking me up off the ground and shaking me and threatening me to drag me up the hallway back up to my cell if I don't get up and walk[.]"

*Id.* at 22.

The unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). To state a proper claim under the Eighth Amendment, the prisoner must satisfy both an objective and a subjective component. *Moore v. Holbrook,* 2 F.3d 697, 700 (6th Cir. 1993).

The objective component requires the pain inflicted to be "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). This is a "contextual" inquiry that is "responsive to

6

contemporary standards of decency." *Hudson v. McMillan*, 503 U.S. 1, 8-9 (1992).  No actual injury needs to be proven to state a viable claim under the Eighth Amendment.  *Moore*, 2 F.3d at 700.  When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated, whether or not significant injury is evident.  *Hudson*, 503 U.S. at 9.  Medical evidence and the extent of plaintiff's injuries should be evaluated with all the other evidence in determining whether malicious or sadistic force was used.  *Reist v. Orr*, 67 F.3d 300 (6th Cir. 1995).  The constitutional prohibition of cruel and unusual punishments necessarily excludes *de minimis* uses of physical force, provided that the use of force is not of a sort "repugnant to the conscience of mankind."  *Rafferty v. Trumbull Cty., Ohio*, 915 F.3d 1087, 1094 (6th Cir. 2019) (quoting *Hudson*, 503 U.S. at 9-10).

The subjective component focuses on the state of mind of the prison officials.  The relevant inquiry is "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm."  *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Hudson*, 503 U.S. at 6).

Courts considering an excessive force claim consider several factors, including the extent of the injury suffered, the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the prison official, and any efforts made to temper the severity of a forceful response.  *Whitley*, 475 U.S. at 321.

Finally, prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  *Hudson*, 503 U.S. at 6 (quoting *Whitley*, 475 U.S. at 321-22).

Applying the factors from *Whitley*, 475 U.S. at 321, CO Stitsinger is entitled to summary judgment. The first factor is the extent of the injury suffered. Plaintiff describes the indignation he felt upon being lifted by Stitsinger. He says he was hurting when Stitsinger lifted him, and that being lifted increased his pain. Plaintiff acknowledges that Stitsinger was trying to get him to an x-ray machine, that he wanted and needed x-rays, and that he did nothing to make it easier to Stitsinger to move him. While the prison staff could have been more polite, the alleged injuries to Plaintiff on account of Stitsinger's use of force were minimal. Plaintiff only alleges they caused him increased pain in the moment. This factor weighs against a finding of excessive force.

The second factor is the need for the application of force and the relationship between the need and the amount of force used. Here, force was necessary to get Plaintiff to an x-ray machine. If Plaintiff was unwilling or unable to apply the force needed to move his body to the next room, then it follows that jail staff would need to transport him. Although Stitsinger's use of force may not have been ideal, the need for force is apparent in Plaintiff's description of the circumstances. Further, as documented in the video recording, Plaintiff had previously walked to a wheelchair, merely using correctional officers as support. CO Stitsinger could reasonably have expected Plaintiff to walk a short distance again. It was thus not unreasonable for Stitsinger to attempt to move Plaintiff by himself. This factor also weighs against a finding of excessive force.

The final factor considers the threat reasonably perceived by the prison official, and any efforts made to temper the severity of a forceful response. This factor does not apply in this case because this is not a case of a forceful response to a threat.

8

Applying the *Whitley* factors indicates that Stitsinger's decision to try to lift Plaintiff was not a use of excessive force in violation of the Eighth Amendment. Plaintiff's factual statements, taken as true, fail to establish an excessive-force claim.

## II. Deliberate Indifference to Safety (CO Sendelbach & Jailer Daley)

Plaintiff argues that CO Sendelbach was deliberately indifferent to his safety when he made him walk handcuffed down a flight of stairs. He argues the jailer, James Daley, shares in this culpability by having a policy that permitted this risk.

A deliberate indifference claim contains both an objective and a subjective component. To show that the alleged mistreatment was objectively "sufficiently serious," the plaintiff must show he is incarcerated under conditions posing a substantial risk of serious harm. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011).

The subjective component requires a showing that prison officials acted with "deliberate indifference" to inmate health or safety:

> An official is deliberately indifferent if he or she "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of harm exists, and he must also draw the inference." [*Farmer*, 511 U.S. at 837.] The Supreme Court has held that:
>
>> Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence . . . and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.
>
> [*Id.* at 842.] However, a prison official who was unaware of a substantial risk of harm to an inmate may not be held liable under the Eighth Amendment even if the risk was obvious and a reasonable prison official would have noticed it.

9

*Bishop*, 636 F.3d at 766-67. Deliberate indifference is equivalent to criminal recklessness. *Farmer*, 511 U.S. at 839-40. The plaintiff "must demonstrate deliberateness tantamount to intent to punish." *Horn by Parks v. Madison Cty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994).

CO Sendelbach's decision to walk Plaintiff down stairs was not deliberate indifference to an excessive safety risk tantamount to an intent to punish. The facts as alleged by Plaintiff do not give reason to believe that Sendelbach could have expected Plaintiff to be hurt.

Plaintiff explained in his deposition that he was going downstairs for a "sick call," although he does not remember his medical issue. D.E. 91 at 6. CO Sendelbach handcuffed Plaintiff and the other inmate (whom Plaintiff knows as "Forty") before they left the cell. *Id.* at 6, 8. Plaintiff was at the front and while descending, he "felt [his] foot go" and he remembers "falling towards the railing." *Id.* at 6. "It felt like my foot touched the step and then for some reason it shot out." *Id.* at 8. The next thing he remembers after the fall is "laying on a medical rack -- or in a cell in medical." *Id.* at 9. He says that after the fall, he "could move but any movement sent shocks, you know. It hurt." *Id.* at 7. It was Forty who told Plaintiff what happened immediately after the fall. *Id.* at 9. Plaintiff's description of the events at the stairwell is consistent with the video.

As a result of the fall, Plaintiff had bruises on his upper back and a lump on the right side of his head. D.E. 91 at 9. He suffered headaches for three months. *Id.* at 10. His left hip hurt, and he developed a sore back and neck:

> I couldn't turn my head for a month or better. . . . I put in numerous sick calls after that. The only thing that they did was they x-rayed and about a month later they finally gave me . . . a mild muscle relaxer and mild pain medicine, you know, like a Tylenol.

*Id.* at 9. He would also get "shooting pain" in his leg for "maybe a month or two." *Id.* at 16. Currently, Plaintiff only suffers from occasional headaches. *Id.* at 37.

10

Plaintiff had visited the medical area prior to his fall, and "[s]ometimes they would take the elevator and certain officers would take the stairs." D.E. 91 at 7. Plaintiff said he heard there was a policy to handcuff the prisoners before they left their cells, but some officers would wait to apply the handcuffs until they had gone down the stairs. *Id.* at 7-8.

Plaintiff argues that Sendelbach could have and should have used the elevator. D.E. 91 at 27. "I feel that he was deliberately indifferent because he should have known that walking me down the steps could be dangerous." *Id.* Plaintiff said, "I'm pretty sure that they've had people fall down the steps in the past." *Id.* at 20. But he clarified that he did not know any names of inmates who fell, "I'm just saying that I'm sure there has been." *Id.* Plaintiff was asked, "So you're just assuming then that people have fallen down steps before?" *Id.* at 21. He responded:

> Yeah, I'm assuming. Well, I heard one of the female officers, again, I don't know her name, when we was getting escorted one time, and she tried to take us -- or tried to take me to the stairs and we wasn't going, we was going down the elevator and she's like, well, you can go down the steps. She's like -- how did she say that? You can fall and try to sue us. It's been tried before, stuff like that. I don't know exactly what the words were. That's what made me believe that at some point in time somebody's fell down the steps before.

*Id.* After the fall, Plaintiff would refuse to walk down the stairs, and staff let him descend in the elevator, but he still took the stairs going up. *Id.*

Plaintiff acknowledged in his deposition that he had walked handcuffed down the stairs previously without falling. D.E. 91 at 21. When asked if he had done that on a daily basis, he answered:

A. No, maybe five or six times.

Q. And you'd never fallen before?

A. No.

Q. Is it fair to assume that someone can walk down the steps without falling?

11

   A.  Unaided or restrained?

   Q.  In general.

   A.  Yes.

*Id*.

   Plaintiff has not shown that CO Sendelbach was deliberately indifferent to his safety. Sendelbach cites several cases in which other courts have found that requiring inmates to walk handcuffed downstairs does not amount to deliberate indifference. D.E. 90 at 10-11. These cases are persuasive, and Plaintiff does not meaningfully address them in his response brief. This case is not like the *Anderson* case cited in Judge Bertelsman's Order where the stairs were littered with spilled milk and trash. D.E. 37 at 3 n.1 (citing *Anderson v. Morrison*, 835 F.3d 681 (7th Cir. 2016)). Instead, this case fits comfortably within the lines of cases cited by Defendants. D.E. 90 at 10-11. Plaintiff acknowledges that inmates were generally able to walk down the stairs handcuffed without falling, and he had done so several times himself. D.E. 91 at 21.

   In his response brief, Plaintiff takes issue with the lack of discovery on the jail's decision to install an elevator. D.E. 94 at 2-3. The elevator's existence and history are not relevant because, even taking Plaintiff's factual assertions as true, sending him down the stairs in handcuffs did not amount to deliberate indifference. The Eighth Amendment does not require correctional officers to maximize inmate safety at all times, only to refrain from ignoring an excessive safety risk tantamount to an intent to punish. That Plaintiff assumes he was not the first to fall down the stairs does not change this result. Plaintiff's factual allegations establish neither the objective nor subjective component of a deliberate-indifference claim.

   The same analysis renders summary judgment appropriate for jailer Daley. Because walking handcuffed inmates down stairs does not present a constitutionally impermissible risk,

assuming Daley instituted or tolerated such a policy, he could not be liable for a constitutional violation.

### III. Deliberate Indifference to Medical Needs (Nurse Holub & Dr. Kalfas)

Plaintiff argues that Nurse Holub was deliberately indifferent to his medical needs, as was her supervisor Dr. Kalfas, who was not present on the date of Plaintiff's fall.[2]

To succeed on an Eighth Amendment claim related to a prisoner's medical treatment, the prisoner must prove that the prison officials unnecessarily and wantonly inflicted pain by acting with deliberate indifference toward the prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *see also O'Bryan v. Fed. Bureau of Prisons*, No. 6:07-CV-76-DCR, 2007 WL 2571906, at *4 (E.D. Ky. Sept. 4, 2007). To prove a deliberate indifference claim, the plaintiff must establish both an objective element (that the medical condition was sufficiently serious) and a subjective element (that prison officials knew of, but consciously disregarded, a substantial risk of harm to the plaintiff's health). *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 895 (6th Cir. 2004).

And, in cases where "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims that sound in state tort law." *Graham ex rel. Estate of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 385 (6th Cir. 2004) (quoting *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976)).

The subjective element has been described as "more culpable than mere negligence; it must demonstrate deliberateness tantamount to intent to punish." *Horn by Parks v. Madison Cty. Fiscal Court*, 22 F.3d 653, 660 (6th Cir. 1994). Further, "the subjective intentions of prison authorities must be demonstrated by objective manifestations of such intent, and cannot be

---

[2] Plaintiff stated he "never saw" Dr. Kalfas. D.E. 91 at 31.

13

proved by factually unsupported, conclusory opinions[.]" *United States v. State of Mich.*, 940 F.2d 143, 154 n.7 (6th Cir. 1991); *accord Stevens v. Gooch*, 615 F. App'x 355, 360 (6th Cir. 2015).

Plaintiff's injuries have already been described. As noted, he woke up in pain after the fall and found himself in the presence of Nurse Holub and CO Stitsinger, who was tasked with moving Plaintiff to the mobile x-ray machine once it was ready. The x-rays revealed no broken bones. Plaintiff acknowledges that jail staff immediately came to his aid after the fall. D.E. 91 at 10. The video shows Nurse Holub carefully checking Plaintiff after the fall before he is escorted to the wheelchair by guards—consistent with Plaintiff's description based on what Forty told him. *See* D.E. 91 at 8, 30. Nurse Holub then ensured that Plaintiff received x-rays. Plaintiff's argument is that Holub should not have ordered officers to move him as they did, which included his being taken to a wheelchair and Nurse Holub asking CO Stitsinger to take Plaintiff to the x-ray machine. D.E. 91 at 30. Plaintiff further explained at his deposition:

> Q. Other than your belief that Nurse Holub should have either had you have a neck brace on or used a backboard when you were being transported, is there any other treatment that you think that she should have provided to you on that day that she did not?
>
> A. Yes. . . When they got done x-raying me -- like I said, I'm not for sure what she done to me while I was asleep, but other than that, like they took me and put me in a cell and let me go to sleep for I don't know how many hours and nobody come in and checked on me. I mean, I'm not a doctor or anything, but, you know, if I had a concussion, it seems like I could have laid up there and died. They just let me go to sleep right after I was knocked out from falling down a flight of stairs.
>
> Q. Do you know if Nurse Holub checked you for signs of a concussion?
>
> A. I don't.
>
> Q. Do you have any evidence to indicate that you did sustain a concussion?
>
> A. No, just -- like I said, just being knocked out. . . .

14

*Id*. at 33.  He further explained:

> Q. Other than that, you don't have any criticisms of her?
>
> A. No.
>
> Q. Has anyone told you that your current physical condition would be any different had you been sent out to the hospital?
>
> A. Not at the time, no.
>
> Q. Anyone indicated to you that you would have received any different treatment?
>
> A. No.

*Id*. at 34.

Plaintiff's claim against Nurse Holub amounts to second-guessing her treatment decisions related to his non-serious injuries.  Under the standards described above, his allegations, taken as true, do not rise to an Eighth Amendment violation.  Nurse Holub argues:

> Plaintiff has no evidence that she disregarded his condition.  As set forth more fully above, she responded to the scene of his fall, performed a full assessment of him, and had him moved to a cell for observation.  She then contacted the doctor who ordered an x-ray.  When the x-ray tech arrived, she facilitated the testing.  Once Plaintiff was cleared, he was returned to his cell.  Plaintiff's complaint against Nurse Holub with respect to her care is that she maybe should have placed him on a neck or back board (although he has produced no evidence that this was required under the circumstances and concedes that he does not know whether their use was warranted); that allowing him to sleep may have been a bad idea (although there is no proof that his condition suggested that sleeping was contraindicated); that she should not have spoken to him rudely (rudeness is not actionable in and of itself); and that she should not have allowed a deputy to move him (despite there being no evidence that the force was excessive or that she had knowledge of what was acceptable force).

D.E. 93-1 at 14-15.  The Court agrees that the undisputed facts fall far short of establishing deliberate indifference.  And Plaintiff does not mention Nurse Holub at all in his response brief.  D.E. 94.

15

Like Nurse Holub, Dr. Kalfas is also entitled to summary judgment. Dr. Kalfas never saw Plaintiff in relation to his fall or provided any treatment. D.E. 91 at 31. The claim against Dr. Kalfas is simply that she was the supervising physician and her policies allowed Plaintiff's alleged mistreatment. D.E. 91 at 35. As explained, Plaintiff has not shown his treatment was in any way inadequate, unreasonable, or negligent. Nor does Plaintiff identify any specific policies that he believes led to his mistreatment. Accordingly, accepting Plaintiff's factual allegations as true, they do not show deliberate indifference to his medical needs on the part of Dr. Kalfas.

### IV. Qualified Immunity

In the alternative, all five defendants are entitled to qualified immunity.

> Qualified immunity protects state officials, including prison employees, so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. In resolving qualified immunity claims, we ask whether: (1) the facts, viewed in the light most favorable to Plaintiff, show a violation of a constitutional right; and (2) the right at issue was clearly established at the time of the alleged misconduct.

*Reilly v. Vadlamudi*, 680 F.3d 617, 623 (6th Cir. 2012) (internal citations and quotation marks omitted). "[Q]ualified immunity must be assessed in the context of each individual's specific conduct." *Id.* at 624. "The burden rests on Plaintiff to show Defendants are not entitled to immunity." *Id.* at 623.

CO Stitsinger is entitled to qualified immunity. As previously discussed, his decision to attempt to lift Plaintiff and escort him physically to the x-ray machine was not unreasonable under the circumstances. Plaintiff's alleged facts do not amount to a finding that Stitsinger used greater force than necessary under the circumstances or was sadistically trying to harm Plaintiff. Nor has Plaintiff shown that there existed a clearly established right not to be gruffly lifted by a corrections officer in order to be taken somewhere for medical treatment.

16

Daley and Sendelbach are also entitled to qualified immunity. As already discussed, several courts have found that no constitutional violation occurred when inmates fell while walking handcuffed downstairs—absent the existence of aggravating circumstances. *See* D.E. 90 at 10-11. Accordingly, there was no clearly established right to avoid walking down stairs while handcuffed. And, as discussed, Plaintiff has not shown his constitutional rights were violated. He has proven neither prong required to overcome the application of qualified immunity as to Defendants Sendelbach and Daley.

Likewise, Nurse Holub and Dr. Kalfas are entitled to qualified immunity. Plaintiff's facts, taken as true do not "show a violation of a constitutional right." *Reilly*, 680 F.3d at 623. Nor does the Court have reason to find that the rights Plaintiff complains about (concerning how he was moved and treated after his fall) were clearly established in the case law. *Id.*

## V. Conclusion

The undersigned **RECOMMENDS** that Defendants' motions for summary judgment (D.E. 90 & 93) be **GRANTED.** Plaintiff's claims fail on the merits. Accepting as true all factual statements included in his deposition, Plaintiff has not shown that any defendant used excessive force or was deliberately indifferent to his safety or medical needs.

Any objection to this recommendation must be asserted in response to this Recommended Disposition. The Court directs the parties to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. Within **fourteen days** after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Judge. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further

appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

This the 26th day of May, 2020.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge